17-4159. Counsel, please make your appearance. Good morning, Your Honors. Josh Lee for the defendant, Mr. Hansen. This court held in several cases in the 1980s that a waiver of counsel is invalid unless the judge advises the defendant on the record of the fact that the defendant is not guilty of the crime. In 1991, panels began deviating from that precedent and describing a von Moltke colloquy as optional. This court should now return to its settled precedent, reject the subsequent deviations, and hold that Mr. Hansen's waiver of counsel is invalid because he wasn't adequately advised about the nature of the offense, possible defenses, circumstances and mitigation, and the applicable penalties. Let me see if I fully understand your position because it seems to me that at least one could read what you said as staking out basically a binary choice. In other words, we go back to full von Moltke or we go to something more loose and fast. It seems to me that there is some middle ground here, which is the notion that our prior cases suggested that the doing that sort of inquiry may be the, it's a means to an end and it may be the best way, but not the only way. But that doesn't mean that, arguably, it doesn't mean that you don't look at that template of the von Moltke standards and say, okay, at least in substance, is this proceeding getting at the same thing? In other words, you didn't do the full-blown inquiry. You didn't do it in a structured way where you asked a litany of questions, but you got at the same thing. And that's what I'm trying to say. So my point to you is, is this really a binary choice between something that essentially is loose and doesn't really focus on the satisfaction of that, or is it something that says, are we in substance actually getting at the factors that were alluded to there? So two responses to that. First, this Court's opinions in the 1980s are absolutely categorical and unambiguous that all of these factors must be dealt into or that all of these factors must be dealt into. So the waiver is per se invalid. Yeah, and then we have cases later that interpret the import of those cases. All I'm saying is I don't think it really helps you to make an argument where there's only two choices. But if that's what you want to do, that's fine. Well, so the first point is that you can't convert something from mandatory to optional without contradicting prior precedent. But if the Court did go on to consider whether he actually knew about these von Moltke things, he still wins. The question is what he knew at the time of the waiver. And is that the question? And that was one of my salient questions to ask you. I mean, we have language in our opinions that speak of on the record as a whole, speak of totality of circumstances, and it could be read in a number of ways. What I wanted to get was your take on whether the universe of information that we're looking at in determining the knowing and voluntariness of the waiver, does it stop at the time that that proceeding ends? In other words, I could see under one argument, you consider the stuff before, you consider, you know, his age, circumstances, familiarity with the criminal justice system, and then it stops right there. Either it's knowing or voluntary or not. Or record as a whole could suggest that you look at what he did at trial, and you look at whether that, how that influences whether he knew what he was doing at the time of the waiver. Which one of those are you saying is appropriate? So if the Court accepts my argument that this colloquy is mandatory and you only consider the colloquy from the 1980s cases, you definitely stop at the hearing because you only consider the waiver. If you take the government's position that we look at the record as a whole, you can consider the record as a whole, but only insofar as it supports an inference of what he knew at the time of the waiver. And here, there's nothing in the record that supports a strong inference that he knew what he needed to know at the time of the waiver. You've got to remember that the Court indulges every reasonable presumption against a waiver. And the inference that the government is asking the Court to draw don't support that Mr. Hansen actually knew about the nature of the offense, the defenses, circumstances and mitigation, and the applicable penalties. So the first factor that you look at in determining whether he knew these things is the colloquy. That's undisputably a factor. And the colloquy was deficient. That's undisputably a factor, but you're saying that if we're not in this rigid VanMolke world, then you do deem it to be an appropriate reading of our cases that we can look at the record as a whole, meaning things that went on in trial as to how they inform what he knew or didn't know. If we're not in the VanMolke world, yes, that would be correct because you're using the record as a whole to deduce what he knew at the time of the waiver. Okay. But there is nothing to suggest that at the time of the waiver he knew that good faith was a defense to these charges. Absolutely nothing in the record that supports that. Counsel, let me ask you this then because I want to make sure in your response to Judge Holmes a minute ago. Are you arguing that the waiver takes place only at one time and that's when the colloquy, because I understood you just to acknowledge that we can look at the entire record to determine whether or not there was a waiver? I've got a primary argument and a back story. You've got me a little confused as to the answer that you just gave. I know that your primary argument is that you must do the colloquy that's set forth in the district judge's handbook. That's why it's there. So if we don't buy that or we say that we've kind of moved on a little ways down the line, are you acknowledging though that we could, under the present system, that we look at the entire transcript during even the trial to determine whether or not he validly waived? For a very specific purpose and that is, and the government admits this, that you can look at the whole record only to infer what he knew at the waiver year. So the waiver is not ongoing. It happens at the hearing and you have to ask what he knew at the hearing. And there's no evidence that he knew what willfully meant, that it meant the known violation of a legal duty, what corruptly meant, that, again, that he had to act in known derogation of a legal duty. There's just no evidence of that. Do you think the court in its colloquy has to go through and explain all of the technical terms to the defendants? I think if you look at the Supreme Court's decision in Tovar, which the government cited, what the district court has to do depends on whether the charge is easily grasped or complex. And if the charge uses legal terms of art, there's not very many things that a defendant has to know to waive. But one is he really has to understand the nature of the offense. And if it uses legal jargon, you can't assume that he would know it, particularly if he has no prior experience with the criminal justice system, as Mr. Hanson did not. He had substantial back and forth with the district courts by the time the court found that he'd validly waived, right? He did none of it related to the nature of the offense. But, I mean, a lot of it was, I mean, the court even advised him that he'd had three, recently, three people that were similarly situated that were wanting to take the same position as him, right? He did. The question, though... And the court told him... The court told him, and those people all lost. He did, but the question, under the von Moltke factors, which would govern what he actually knew, is he has to know about what defenses are possible, not about what defenses aren't possible. And there's a reason... Well, they did talk about some defenses, right, that might be available? No, he did not. He did not talk about any. And there's a reason that he has to know about what defenses are possible. And you go back to what we're doing here. He has to know, if I accept counsel, what can counsel help me with? Well, the judge told him what counsel couldn't help him with. So, he needed to know, if I accept counsel, he might be able to show that, however unreasonable I was, I honestly believed that this was legal. Well, remind me, please, what was the nature of his defense theory then? The nature of his defense theory was the IRS got paid. He said in his opening statement, these checks were sent to the bank, they posted, and the funds were sent out. So, he is still on this, frankly, crazy theory that he sent this check and the IRS actually got their money. So, does the judge have to, under your theory, does the judge have to say, this theory you have, I want you to know that your defense that you've articulated to me is invalid and you will be convicted? No, the judge has to, based on the nature of the charge, the judge has to discuss with him, or, if you take the whole record approach, he has to understand at least one valid line of defense so that he can have some sense of what counsel could do for him. And there's no evidence of that here. I also want to talk about how we know his defense wasn't good faith and how we can infer that he didn't understand possible defenses and the nature of the charge. When he's questioning these witnesses, from all of the witnesses, he's talking about not what happened when he sent the checks, which would be a good faith defense, but what happened after. He says after these checks were honored, that they posted, they were never dishonored. He's trying to prove that the IRS got paid. Now, the government points out that he did raise good faith in closing argument, but that actually supports my position. And the reason is there was a jury instructions conference after all of the evidence was in where the judge did discuss good faith in terms of proposing the jury instructions, and only after the court does the jury instruction does he ever talk about good faith. So the fact that he only talked about good faith after he learned about it in the jury instructions conference and never did before that suggests that that's where he learned about it. And we can therefore infer that six months earlier he had no idea about the nature of the charges. There's also the fact that he wasn't advised about the applicable punishments, and he didn't know about the applicable punishments. There's no evidence that he knew that. The judge never informed the defendant of his authority to impose restitution, and that was crucial in this case. The judge, in fact, said I can impose up to a $105,000 fine. Now, a person in Mr. Hansen's position wouldn't understand that to mean I've got $105,000 in financial liability if I represent myself. In fact, the judge imposed $350,000 in restitution. And not only is there – Well, didn't he – didn't that – well, then maybe I misunderstood.  That figure did correlate. And, okay, well, and he had – he was aware that he had a tax obligation to the IRS, right? But not one enforceable by the criminal court. So he – But he knew he was on the hook for that amount of money. He did. He did. And that's why I think that the focus of the argument is he did not know that an element of the offense was that he had to – and that good faith, no matter how unreasonable, would be a defense to the charges. And because there's no – the district court didn't advise him of that, there's no evidence in the record that he knew about it until closing argument. But let me explore the restitution point for a moment. How, given the fact that he knew that he had an obligation to the IRS of paying that amount of money, it's not immediately clear to me why that would have been a factor that would have been not – he would not have known would have factored into his – into the liability as to which he would be subject if he were convicted. He didn't know that because he was under the delusion that the IRS had been paid, for one thing. You know, he – if you look at the – Well, the question is what he was charged with. I mean, in the IRS, you know, it's not that whether he agrees with it. The IRS charged him. The IRS charged him based, in fact, on criminal conduct associated with this liability. And so he knows the liability. He knows that's what they think. And so the whole question is whether he knows that's what they think. And if he gets convicted, they're going to get what they think. I mean, doesn't he know that irrespective of whether he's advised about restitution? The question is what the court was going to impose as a consequence of the criminal conviction. And the court – And is it – is restitution not a consequence of the criminal conviction? It is, but the court didn't advise him that it could impose restitution. Well, the point I'm making is if – all right, fine. What he would have known could happen as a result of the criminal conviction by the court, right, the distinction you're making. But he would have known that if he had been convicted by – of that crime, he would have been on the hook to the IRS for that amount of money. I don't know if I could – if I would say that. But I don't think that the court has to go there because I think it can rest on him not understanding a crucial element of the offense and him not understanding any valid line of defense, which he has to know. He has to be advised of it, first of all. But at a minimum, he has to know about it. And there's nothing in the record that suggests that he knew about it. Does the standby counsel make any difference here? I mean, he had a lawyer on standby that presumably he could contact and ask questions and talk about his case at any time. For two reasons it makes no difference. First, the court has held the fact – this court has repeatedly held the fact that standby counsel is appointed doesn't change what the defendant has to know at the time of the waiver. Anything less than full representation requires that he know all of these things. Okay. What's the case that addresses the standby counsel issue? I believe it's in Taylor is where it says it most explicitly. All right. But there are at least two, and I've cited those in my brief. If I could just finish real quick my answer. Sure. The other thing is we can assume that standby counsel would have advised him of what he needed to know because this court has repeatedly said we have to be able to do it without speculation. And what standby counsel would have told him is purely speculative. Nothing in the record about it. Thank you, Your Honors. Thank you. Thank you. May it please the Court. My name is Greg Knapp. I am from the Department of Justice Tax Division. The defense's argument is that this case – this court requires in every case not only a comprehensive Feretta hearing, but also a hearing at which the district court explicitly discusses all the factors that were mentioned in full milk of the ghillies. And moreover, the defendant argued that – Counsel, before you get too far into it, the handbook of the United States district court judges, of which I was a district court judge at one time, has a specific section set aside for the purpose of when a person wants to represent themselves. And it says, as it leads into it, it says this means that you must make clear on the record that the defendant is fully aware of the hazards and advantages or disadvantages of self-representation. And it lists, then, 15 specific things that they either suggest or make mandatory. Are you aware of those? I am. Okay. And I assume that this district court probably had that, and you acknowledge that he did not use this as a colloquy in that decision, or in this case. Is that right? Well, he didn't ask every question. No, my question is, did he or he didn't? Did he use this colloquy? I don't believe he used it exactly. Okay, I agree with you. I don't think he did either. So the next question then that has to be, and annoying and voluntary, we may have moved along, and it may be that it's not mandatory. So I'm saying, okay, let's go to that position, and let's look at the record as to how this man responded in regards to these. And it's some, even, and you'll give me the fact that I think at one time the AUSAs were concerned about the ability of this man to represent himself, and that's on the record, right? It is in one place in the predicate. Yeah, they were even a little concerned about it. Now, when asked if he wanted to represent himself, he said yes, that he wanted to, and then they proceeded to ask questions, if you'll give me just one moment to look here. He was asked, you have the right to represent, representation of counsel, which is your constitutional right. You also have the right to understand that you can represent yourself. Your Honor, he says, here is the defendant, Lewis Hanson. This is my fiction that the court has named as a defendant. This is not me. Now, that's his response to that first question. And then the defendant was asked, and you understand that if you choose to represent yourself, you will not be given a special privilege simply by that fact. Do you understand that? The defendant never even answered that, according to the record. And that's what's bothering me as I go through this record. And sure enough, he represents instances of disaster. I mean, there's no question about what happened. It just smacks to me, really, that there's a problem here about the defendant understanding, did he really know and did he really waive his right to represent himself? Now, if you can overcome, you know, those answers with me, you may convince me, because I understand the colloquy, but I have a real problem with the actual answers that he gave during that hearing. I understand. Okay. And it is very true that at points in that hearing, Mr. Hanson was not responsive. Oh, they were crazy. But at other points, he was entirely responsive. So, for example, the first question earlier was, do you want to represent yourself? Yes. Because he said yes. Unequivocally. And then thereafter, to the extent he's not being responsive, essentially he's preserving his jurisdictional arguments, his challenge to the court's jurisdiction. So, for example, yes, it is true that at various times he would not directly answer that, yes, I understand my obligation to follow courtroom rules and procedures. But he previously had answered, yes, that he did. And when he did not, it was only after he had interjected a jurisdictional challenge. And so the district court responded. Where did he answer that yes? I never found him saying that he would agree to follow court rules and procedures. Every time he was asked that question, he would shift it to something else. I don't recall him saying that. During the Feretta hearing, the first time that the district judge asked that question on Record Volume 1, page 234, do you understand that in a legal proceeding there are rules that the court will follow and will require that all the parties before the court follow? Mr. Hanson, yes. That's on page 14. Yes, I see that. But when he's asked specifically whether he'll do it, he didn't answer that question. He was nonresponsive when he was asked specifically whether he would do it. And to your point earlier, Judge Baldot, actually there are two places where the AUSA expressed concern about whether he would be able to represent himself. I think that's a big thing. You know, when the AUSA has to intervene and say, you know, court, this makes me uncomfortable, and the AUSA has to give the court a litany of questions to ask Mr. Hanson, which not all of them managed to make its way through. So it seems to me that that – what do you do with that? I mean, he gives me some pause, and it would seem to me that it should have given the court some pause as to whether this guy knows what he's doing. And it certainly gave some pause, and that's presumably why the AUSA interjected. But after the ASU – But whether it was successful is another question. Well, after the ASU interjected, the basis for that interjection was that, Your Honor, Mr. Hanson just said that he wouldn't be able to follow courtroom procedures. And Mr. Hanson's direct response to that was, no, I didn't say that. Oh, yeah. Well, no, I didn't say that. But it was never clear, or he never answered affirmatively to the question, will I follow courtroom procedures, did he? Well, he indicated his understanding. And this Court, in cases like Williamson, a citing our case, in cases like Pilevsky, indicated that in similar colloquies, the district court advised the defendant of his obligation to follow courtroom rules and procedures. And that was sufficient. It is true that Mr. Hanson was not always responsive, but that is not an atypical pattern. Mr. Hanson apparently wanted to preserve his objection to the whole proceedings, and that does not make his undertaking unknowing. Well, the problem here is that we start with the presumption that counsel – that these people should be represented, right? You have to overcome that to allow that individual to represent himself. And, I mean, if you start with that presumption, then we're not sort of looking to find some basis to allow for self-representation. In fact, you've got to affirmatively make a showing to that effect. And so if you've got somebody here who's wobbling about things and is not willing to affirmatively indicate to the court that he's committing to participate in, even if he considers it a fiction, I'm going along for the ride, court, I think that there's some reason to be concerned about that, isn't there? Well, in terms of what has to be shown, it must be taken into account that Mr. Hanson repeatedly asserted his right to self-representation since day one of the proceedings. And so that needs to be taken into account as well. Well, it does. But shouldn't it also be taken into account that Mr. Hanson has no prior experience with the criminal justice system? He has no sense of necessarily how this is going to play out or how one goes about putting together a defense? This is not one of these guys who's, you know, been run through the system multiple times, is it? No. And that is a factor to take into account, as should his advanced education. Like in Turner, the 2002 case, in our case, where the – where, similar to Mr. Hanson, Mr. Turner repeatedly asserted his right to self-representation, filed a series of pro se filings, was warned by the district court about his obligations to follow rules and that his defenses lacked merit, and who nevertheless pursued a trial and conducted himself in a way that indicated his understanding of what he was required to do. Was it the most effective defense that could have been presented? Of course it wasn't. Well, to Jeff Baldock's point, this defense was, by all estimates, a disaster. I mean, on that point, so that's a whole different matter. And so on that point, let me follow up on this idea of good faith. I mean, what is your assessment of whether, in a broad band of reasonableness, the defendant fashioned a defense – I mean, in terms of evidence, aduce, that kind of thing – fashioned a defense that was consistent with a good faith – put forward evidence that was consistent with a good faith defense? I believe it was consistent with a good faith defense. And how is that? Because Mr. Hansen indicated that he had attended two seminars where he allegedly learned of this method to send in EFT payments and was simply following that manner, thinking that it would work. Also, Mr. Hansen indicated the fact that he had never received any notice from law enforcement or the banks that these checks were dishonored. He also introduced records that he had obtained from the banks, which, as he argued, indicated that there was no indication of the checks being dishonored. And so to answer your question in another way, Your Honor, hypothetically, had the jury believed everything that Mr. Hansen had said, if they'd followed their instructions, they would have been required to acquit because he said, I believed that these checks were legitimate. Now, as Mr. Lee points out, it is not the best, the objectively most professional good faith defense that we can conceive of. Perhaps a better defense in another case would have been to go a step further and say, oh, and by the way, I now completely disavow this prior method. He didn't go that far, although he didn't also explicitly say that he still believed in it. He was sort of ambiguous on that point. But all that illustrates is that an attorney, a standby attorney, Mr. McCoy, Utah super lawyer, probably could have developed a better defense, but that's not the standard. And so I would argue that it was not a disaster. I mean, we can certainly look to areas where there were some missteps, where there were some bizarre lines of questioning, but as this Court has recognized, that's inherent to these types of tax defiers. But he never, did he ever utter the words good faith before his closing argument? Not before his closing argument. But in preparing his defense, that had to occur before trial. I mean, he presented an opening statement where he laid out the evidence that he was going to present about these EFT seminars, about the lack of notice, the alleged lack of notice, about the invalidity of these instruments. And I would like to return to the Feretta hearing for a moment. Or the so-called Feretta hearing, yeah. What passes as one, yeah. Well, the district court acknowledged that we were going to conduct a hearing that was going to raise the question of whether he had... And he thought the hearing was about jurisdiction and kept saying that he thought it was about jurisdiction. What did we make of that? He didn't even seem to know what the purpose of the hearing was. Isn't that relevant to whether I'm knowingly and voluntarily waiving my right to representation? I don't know the subject of the hearing. Is that? And so what he did was he interspersed with that those statements were questions regarding whether or not he wanted to appoint counsel. And he requested the opportunity to consult with the potential appointed counsel before making that decision. And so to put this another way, if the record indicates that Mr. Hanson was advised with all the information that this court's case law requires, cases like Williamson, cases like Polesky, cases like Behrens, Turner, all sorts of cases, the fact that Mr. Hanson also interjected these jurisdictional challenges, as is typical in these types of cases for these types of defendants who want to represent themselves and want to put their views before the jury personally because that's what they believe in, that should not undermine the evidence that the defendant knew what he was going into, that he was entering the decision with eyes wide open. Is that all that the record requires? That seems to be, well, unless you go to the extent of saying there needs to be essentially a litany recited, then the substance of the law may well be what you say, but it still begs the question of whether the record actually shows that. I mean, that's the question. I mean, the question is whether he, in knowing that the only basis really yet to survive was good faith, was able to actually induce evidence in any stumbling fashion to do that so that the jury was aware that that's what they should be concerned about and that there was evidence to do it. And he did. I went to these EFT seminars. They gave me a detailed explanation. I didn't fully understand how it worked, but I believed that it worked, and so me and my wife followed it and we sent these checks in thinking that it worked and no one ever told us otherwise. If the jury believed that, that is good faith. They obviously didn't because, I mean, the government, we're not arguing that defense was persuasive as an evidentiary matter. It obviously failed because the government had contrary evidence, of course, but that doesn't undermine the knowing and intelligent nature of the waiver or his understanding of his obligations to present a defense. What about the idea of having no concepts like willfully and that sort of thing? Was that something that he had to be aware of as he proceeded? No. And first, back to the bench book model inquiry, I would note that the bench book doesn't require any sort of recitation of the elements, the definition. It has to be informed of the nature of the charges, which he was done in this case, but there's no case law that requires, for example, defining willfully, corruptly, what a deficiency of tax means. There's just no support for that. Well, isn't that part of understanding what the charges are? I mean, the tax law is one of the unique areas where willfully actually is a mens rea. So why wouldn't that be relevant? Correct. And willfulness is also the inverse of good faith. That's clear in the Supreme Court's decision. Well, the district court didn't advise him as a good faith either. Correct. But as we've discussed, at least as I argue, the conduct of trial indicates that Mr. Burts, or excuse me, Mr. Hansen, understood the idea of good faith, and therefore he also understood that that was sufficient to negate the criminal intent that the government had to prove as part of the criminal tax charges. Well, that raises a question. Let me ask you. Is it what the defendant understands, or is it whether the obligation of the court was fulfilled? It's what the defendant understands, and that follows directly from Iowa v. Tovar, the Supreme Court's 2004 decision. I read recently, looking at the supplemental authority, I didn't see anything in there that said that. So what are you alluding to in Iowa that says that? I'm alluding to the fact that the Supreme Court made clear there's no set script and that the Constitution does not require any particular language. My question, though, was if I understood it and you went in as a district court and said, you know what, do you want to waive your rights? I said, yes. All right. Move on. The question is, if it later turns out I understood everything that the court should have advised me, who wins in that situation? Well, I think in that hypothetical situation, there probably wouldn't be enough else in the record to indicate that understanding. Maybe there would be. No, but the point, the focus of my inquiry is, should we be looking at, even looking at the record holistically, whether we can know that what the district court said was adequate because he acted on it, or are we just saying we're looking at whether he acted on it? Do you get what I'm saying? There's a different focus in that, and it seems to me since our job is not to grade his papers but to grade the district courts, and I mean that figuratively with respect, isn't the notion that we're looking at what the court did. Well, I disagree. I think that the district court giving a very detailed colloquy and asking very specific questions will certainly assist appellate courts in their review of the question of what the defendant actually understood. It would prevent this kind of case. I'm sorry? It would prevent this kind of case if they had gone through it detailed like that, wouldn't it? We wouldn't be arguing about whether he knowingly and voluntarily, if he agreed to every one of those steps, we wouldn't be here today. Generally, the more detailed the inquiry, the more it helps the appellate court. But the inquiry at the end of the day is still whether the record indicates that he understood the nature of the undertaking. That's the question. And so this court may strongly suggest, even mandate, that district courts should, as an exercise of its supervisory power, district courts should engage in such and such inquiry. According to the defendant, our case law has already done that. I disagree with that reading. I understand that. Your time is up. It is up. And I thank you for your time. You bet. Did you have any? I did not. Okay. Case is submitted then. Thank you, counsel, for your arguments.